United States Court of Appeals
Fifth Circuit

**F I L E D**

June 17, 2005

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-31024

MICHAEL BALLARD,

Plaintiff-Appellant,

versus

STEPHANIE WALL, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The plaintiff-appellant, Michael Ballard ("Ballard"), appeals from the dismissal of his civil

rights action under 42 U.S.C. § 1983 after the district court granted Rule12(b)(6) motions in favor

of the defendants: Louisiana State District Court Judge Marilyn Lambert, attorneys Robert Ryland

Percy, III and Stephanie Wall, and the law firm of Percy, Pujol, and Wall (the "Pujol law firm").

Ballard's complaint alleges, <u>inter alia</u>, that the defendants violated his rights under § 1983 by keeping

him in jail until he paid his debt, without due process of law. Ballard essentially contends that the

defendants operated a debtor's prison in violation of his constitutional rights. For the reasons which

follow, the order of the district court granting the defendants' motion to dismiss is AFFIRMED in part, REVERSED in part and REMANDED.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute began in December of 1996 after a Louisiana parish court rendered a money judgment against Ballard in favor of Machine Products Manufacturing Company, Inc. (the "judgment creditor"). At some point, Ballard became indebted to the judgment creditor, presumably on a preexisting account. To collect on that balance, the judgment creditor filed a suit against Ballard for an open account. The judgment creditor was represented by attorneys Percy and Wall (collectively "the attorneys"), both in the employ of the Pujol law firm. The judgment in favor of the judgment creditor was as follows: Ballard was liable for (1) $7,043.20, plus interest from September 19, 1996, the date of demand, until the debt was paid; (2) reasonable attorney's fees fixed at 33.3% of the principal and interest; and (3) all costs of the proceedings. When Ballard failed to pay the judgment, Percy filed a Motion for a Judgment Debtor Rule. Ballard was summoned to appear in the state district court before Judge Marilyn Lambert on April 23, 2002, at 9:00 A.M. When Ballard failed to appear for the hearing, Judge Lambert, upon request of Wall, ordered a bench warrant in the amount of $10,000, approximately the same amount Ballard owed on the judgment.[1] Ballard admits that he knew of the 9:00 A.M. court hearing, but forgot to appear until 10:00 A.M. that day. Ballard states that when he remembered, he immediately called Percy. He then spoke with Percy and told him of the situation and also requested Percy's advice as to what he should do concerning his tardiness. Ballard asserts that Percy informed him of the bench warrant and the bond and advised him

---

[1] Ballard alleges that Wall requested the judge fix the bond at exactly this amount and suggests that Wall and Judge Lambert understood that this amount would cover the debt.

2

that he would have to pay the bond to avoid being jailed. Ballard then called his attorney who instructed him to go immediately to the court. When Ballard arrived at the courthouse around 11:00 A.M., he went immediately to the clerk's office and was directed to Judge Lambert's chambers. Ballard spoke with Judge Lambert and asked her what he could do to rectify the situation. Judge Lambert instructed him to wait in the hall while she left to make a telephone call to the Pujol law firm. Ballard asserts that after thirty or forty minutes, Judge Lambert returned and informed him that she had talked with the Pujol law firm, and that Percy told her that ". . . he does not want to release the bond." Judge Lambert then informed him that "[y]ou are going to have to pay $10,000 to keep out of jail." Ballard maintains that he then asked Judge Lambert whether he could use a bail bond or a property bond to cover the bond, but Judge Lambert informed him that he could use neither, and that he would have to pay the $10,000 in cash. When Ballard could not meet the bond, Judge Lambert instructed police in the hallway to take him into custody. Ballard was taken to the Ascension Parish Jail and incarcerated until 6:00 A.M. the next morning. From there, he was transferred to the parish prison. While in the jail annex, Ballard called his wife, Patricia Ponthier. After speaking with Ballard, Ponthier called Percy. According to Ballard, Percy told Ponthier that she would have to come up with $10,000 or Ballard would stay in jail until the next court date. The complaint indicates that Ponthier asked Percy, "Can you put someone in jail for not paying a debt?" Percy responded, "Yes ma'am, that's the law."

Ballard asserts that Ponthier then called Judge Lambert's office, and while speaking with Judge Lambert's secretary, Ponthier asked whether there was anything else that could be done to get her husband out of jail. Ballard asserts that the secretary responded, "No, that's the way Judge

3

Lambert does it, Judge Lambert combines the debt and court costs together and it has to be cash for the whole amount and it had to be paid to Mr. Ryland Percy."

Ballard states that on the following day, Ponthier was able to borrow $10,000 from her son. After obtaining the money, Ponthier went to Percy's office. Ponthier asked Percy's secretary whether Ballard would be released from jail if she paid the money. After conferring with Percy, Percy's secretary told Ponthier, in Percy's presence, "just give me the money, I can call the jail and he will be released." Ponthier, in accord, gave the secretary the money, and stood by while she counted it. The secretary then gave Ponthier a receipt for $10,000, as well as a copy of a letter signed by Percy, informing the clerk of court that "this would close the case and the judgment was satisfied."

Ballard alleges that Percy's secretary then telephoned the jail and requested Ballard's release. He was released at approximately 6:00 P.M on the day of that request. On April 25, 2002, a notation was made in the state district court record, "Per Melanie @ Ryland Percy Office don't issue B/W 4/25/02 1:25 P.M."

Ballard did not pursue an appeal through the state courts concerning his complaints about the Judgment Debtor Rule procedure in Judge Lambert's court. Instead, Ballard filed this suit under 42 U.S.C. § 1983 in federal court, claiming federal constitutional violations. Ballard's complaint specifically alleges that the defendants deprived him of his liberty without due process of law by conspiring to operate a debtor's prison. His claim further states that Judge Lambert "had no jurisdiction to operate a [d]ebtor's [p]rison for Judgment Debtors who did not appear timely for court appearances" and that "[s]ince 1840 [d]ebtor's [p]rison has been forbidden in Louisiana." Ballard further asserted that the proper penalty under Louisiana law for failing to pay a debt at a Judgment Debtor Rule is to order a rule to show cause hearing for contempt after proper notice is given.

4

In response to the allegations in Ballard's complaint, Judge Lambert filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), contending she was entitled to absolute judicial immunity from the claims in Ballard's suit because "[s]he was merely setting a bond for a bench warrant that involved a hearing of which she was the presiding judge." The attorneys also filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b), arguing that they were not "state actors" within the meaning of § 1983.

In opposition to the defendants' motions, Ballard contended that Judge Lambert was not entitled to judicial immunity because she acted beyond the scope of her jurisdiction when she ordered him jailed until he paid the debt. He also contended that the attorney defendants were state actors under § 1983 because they conspired with Judge Lambert to operate a debtor's prison. Ballard sought compensatory and exemplary damages, as well as attorney's fees for the deprivation of his civil rights. Ballard also requested a permanent injunction enjoining the defendants "from operating a [d]ebtor's [p]rison and incarcerating debtors until they pay debts."

The district court granted the defendants' motions to dismiss. The court first determined that Judge Lambert was acting within her judicial capacity, and thus, was entitled to judicial immunity when she issued the bond accompanying the bench warrant for Ballard's failure to appear.[2] The court similarly concluded that the attorneys were also entitled to dismissal because they were not state actors as required for a claim under § 1983. This appeal by Ballard ensued.

### STANDARD OF REVIEW

---

[2] Ballard has not appealed the part of the district court's ruling denying his motion to amend pursuant to FED. R. CIV. P. 59 on the basis that Judge Lambert was not immune from his claim for injunctive relief. This claim is accordingly waived.

This court reviews de novo a district court's dismissal pursuant to Rule 12(b)(6). Jackson v. City of Beaumont Police Dep't, 958 F.2d 616, 618 (5th Cir. 1992). All of the plaintiff's allegations must be accepted as true, and the dismissal will be affirmed "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." Moore v. Carwell, 168 F.3d 234, 236 (5th Cir. 1999) (internal quotation marks and citation omitted).

## DISCUSSION

A. Judicial Immunity

Ballard argues that Judge Lambert is not entitled to judicial immunity because she had no jurisdiction to imprison him until he paid the $10,000 debt to Percy, the judgment creditor's attorney. Although Ballard's claim is under § 1983, his complaint takes the tone of a challenge to Judge's Lambert's application of Louisiana's Judgment Debtor Rule procedure pursuant to article 2451 of the Louisiana Code of Civil Procedure. On appeal, Ballard asserts that the district court's judgment dismissing his claim against Judge Lambert on the grounds of judicial immunity must be reversed because the judge exceeded the scope of her authority under article 2451. Based on our reading of Ballard's complaint, taken in the light most favorable to Ballard and giving due consideration to Ballard's heightened burden in the face of the judge's absolute defense of judicial immunity, we cannot conclude on this appellate record that Ballard has stated a claim upon which relief could be granted on this issue.

Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages. Mireles v. Waco, 502 U.S. 9, 11 (1991). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free

6

to act upon his own convictions, without apprehension of personal consequences to himself.'" Id. at 10 (citation omitted). Judicial immunity is not overcome by allegations of bad faith or malice and "*applies even when the judge is accused of acting maliciously and corruptly.*" Id. at 11 (internal quotation marks and citation omitted) (emphasis added). "It is the Judge's actions alone, not intent, that we must consider." Malina v. Gonzales, 994 F.2d 1121, 1125 (5th Cir. 1993). Notwithstanding the aforementioned, judicial immunity can be overcome in two sets of circumstances: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12 (citations omitted).

In determining whether a judge acted outside the scope of his or her judicial capacity, the first set of circumstances articulated in Mireles, a district court is required to consider four factors to discern whether a judge's actions are in fact "judicial in nature":

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

Malina, 994 F.2d at 1124 (citation omitted). These factors are broadly construed in favor of immunity. Id.

In the instant case, the district court, in analyzing whether Judge Lambert was entitled to judicial immunity summed up Ballard's allegations against the judge as follows:

> Ballard failed to appear before the court for an examination of judgment debtor. Judge Lambert ordered a bench warrant for the arrest of Ballard and fixed the bond amount at $10,000.00 cash, approximately the amount owed by Ballard. Ballard could not post the cash bond and was incarcerated until it was met.

7

In concluding that these allegations satisfied the four factors set out in <u>Malina</u>, the district court determined that (1) it was a "normal judicial function" for Judge Lambert to issue a bond accompanying a bench warrant for Ballard's failure to appear at the Judgment Debtor Rule, (2) Judge Lambert issued the bond in her courtroom, (3) the controversy centered around a case pending before Judge Lambert, and (4) Judge Lambert was acting in her official capacity as a judge.

With regard to the second set of circumstances articulated under <u>Mireles,</u> the district court determined that Judge Lambert had subject matter jurisdiction over the civil matter involving Ballard and had acted within her jurisdiction as a state district court judge. The district court commented that "Ballard's argument centers on how Judge Lambert procedurally erred in issuing the bench warrant for his arrest after failing to appear before the court," and that Ballard should have taken that issue up on state appeal, rather than having filed suit personally against Judge Lambert.

On this appeal, however, Ballard argues that his complaint did not merely allege that Judge Lambert erroneously issued a bench warrant and bond. He argues instead that his complaint alleged the following additional assertions: (1) Judge Lambert imprisoned him because he could not produce $10,000 cash; (2) Judge Lambert's secretary informed Ponthier, Ballard's wife, that the only way Ballard would be released from jail was if he paid Percy the $10,000; (3) Ballard was in fact released from jail after paying Percy $10,000 cash and after Percy's secretary called the jail requesting his release; (4) Percy subsequently informed the clerk of court that the case against Ballard could be closed and that the money judgment against him had been satisfied; and (5) a bench warrant for his arrest was not issued after Percy's secretary made the request.

Ballard argues that his complaint alleged that Judge Lambert imprisoned him until he paid his debt, in violation of his constitutional rights. Ballard points out that if the $10,000 he paid simply

8

represented a "bond," as Judge Lambert contends, then based on LA. CODE CIV. P. art. 5121 (providing that a bond is paid to clerk of the trial court in which the proceeding was brought), he would have been required to pay the clerk of court the money. Instead, he states that he was required to pay Percy, his creditor's attorney, the amount owed in order to be released from jail.

Taking the allegations that were not addressed by the district court as true, the question in the instant case becomes whether Judge Lambert is nonetheless entitled to judicial immunity. See Malina, 994 F.2d at 1125. Under the first Malina factor, "whether the precise act complained of is a normal judicial function," this court "examine[s] the 'nature and function' of the act, not the act itself." Id. at 1124 (quoting Mireles, 502 U.S. at 13). Ordering the police officers to arrest and imprison Ballard and requiring Ballard's payment of a money judgment are clearly acts normally performed by a judge. See Mireles, 502 U.S. at 12 (state judge's direction to court officers to bring a person before him was a normal judicial function); Malina, 994 F.2d at 1124 (issuing a sentence is a general judicial function). Judge Lambert's actions occurred in the courthouse, specifically in the hallway near her chambers. The controversy centered around a case pending before her. The judge's actions arose directly out of Ballard's visit to her in her official capacity. Therefore, the second, third, and fourth Malina factors have also been met. See Malina, 994 F.2d at 1124.

The question now becomes whether Judge Lambert's conduct was in complete absence of all jurisdiction. Mireles, 502 U.S. at 12. Although Judge Lambert's actions may have been "judicial in nature," she is not entitled to immunity for those actions if her actions were "taken in the complete absence of all jurisdiction." See id. "Where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." Malina, 994 F.2d at 1125 (citation omitted). If Judge

9

Lambert "merely acted in excess of [her] authority," she is still protected by judicial immunity. Id. (citation omitted).

Judge Lambert, as a state district court judge, has original jurisdiction over all civil and criminal matters, "[e]xcept as otherwise authorized by [the] [Louisiana] constitution." See LA. CONST. art. V, § 16. The matter involving Ballard was a civil suit on an open account. The particular hearing requested by the creditor was a Judgment Debtor Rule. See LA. CODE CIV. PROC. art. 2451 (allowing creditor the right to examine the judgment debtor). Ballard's petition alleges that after failing to appear timely for the Judgment Debtor Rule, Judge Lambert imprisoned him until he paid the judgment creditor the money owed.

Despite Ballard's assertions alleging that Judge Lambert arrested and imprisoned him because he did not pay his debt, the record clearly reveals the contrary. As we have previously stated, the law does not allow Ballard to overcome Judge Lambert's judicial immunity by asserting mere allegations of bad faith or malice. The record shows that Judge Lambert issued the warrant for Ballard's failure to appear as ordered by the Judgment Debtor Rule. When Ballard arrived at Judge Lambert's chambers, the warrant was still outstanding, along with the $10,000 bond requirement. Ballard urges this court to conclude that Judge Lambert's ex parte telephone conversation with the judgment creditor's attorneys unduly influenced her decision to require him to post a cash bond in the identical amount of the debt owed. As such, Ballard argues that Judge Lambert exceeded her judicial authority and is, therefore, not protected from suit by judicial immunity. The allegations in Ballard's complaint provide no support for Ballard's arguments. The fact remains that the bench warrant was issued because of Ballard's nonappearance.

10

Moreover, by Ballard's own admission, he failed to timely appear for the scheduled Judgment Debtor Rule. Even more telling is Ballard's own record excerpt submitted to this court, indicating that a bench warrant was indeed ordered by Judge Lambert, apparently for Ballard's failure to appear. There is nothing on the face of the warrant document that remotely suggests that the judge authorized the order for anything other than Ballard's failure to appear. Even though Ballard's appellate arguments attempt to characterize Judge Lambert's conduct as exceeding her contempt powers by not providing him proper notice and a hearing before arresting him for not complying with the Judgment Debtor Rule, i.e., by not paying the money he owed, this record is insufficient for a reasonable fact-finder to make that conclusion. Judge Lambert was not completely outside the scope of her authority as a judge when she ordered the officers to arrest and incarcerate Ballard. Accordingly, the district court's grant of the motion to dismiss in favor of Judge Lambert was proper.

B. Attorneys As State Actors

Ballard next argues that the district court erred in dismissing the complaint against the attorneys. Ballard asserts that the attorneys were "state actors" for purposes of § 1983 because they conspired with Judge Lambert to imprison him unconstitutionally until he paid his debt. Ballard further argues that even if Judge Lambert is entitled to judicial immunity, the attorneys may still be held liable under § 1983. We agree.

"As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments[.]'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982) (quoting Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 156 (1978)). Section 1983 provides a remedy if the deprivation of federal rights takes place "under color of any statute, ordinance, regulation, custom,

11

or usage, of any State or Territory," more commonly known as the "under color of state law" or "state action" requirement. Lugar, 457 U.S. at 929 (internal quotation marks and citations omitted). In Lugar, the Supreme Court set forth a two-part test for determining whether the deprivation of a federal right could fairly be attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor," and "[t]his may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id. at 937. Private individuals generally are not considered to act under color of law, i.e., are not considered state actors, and "private misuse of a state statute does not describe conduct that can be attributed to the State." Id. at 941. Notwithstanding this limitation, a private individual may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970). Indeed, Ballard is correct that even if a judge is entitled to absolute immunity, the state actors, here the attorney defendants, who acted in concert with the judge may still be held liable under § 1983 if they "jointly engaged with [the] state official[] in the challenged action." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).

The district court determined that Ballard failed to allege facts sufficient to meet the standard under Lugar for state action. Specifically, the district court concluded that Ballard had "merely allege[d] that the defendant attorneys incorrectly applied the [Louisiana] Code of Civil Procedure in an unconstitutional manner" and that they had only "misused state law." The district court further

12

determined that Ballard failed to allege that the attorneys acted together with a state official, because Ballard had not alleged that the attorneys "bribed, conspired, or otherwise achieved a meeting of the minds with Judge Lambert to deprive Ballard of his constitutional rights."

Ballard points out on appeal, however, that he did not allege that the attorneys misused the Louisiana statutory provisions concerning the charge of contempt. Rather, he alleged that Judge Lambert chose not to exercise her contempt jurisdiction, and instead ordered him imprisoned until he paid a debt -- which she had no authority to do. Ballard argues that Judge Lambert "abuse[d] her power in complete absence of subject matter jurisdiction to run a Debtors Prison" and that the attorneys acted jointly with her to do so.

With respect to survival of a motion to dismiss under Rule 12(b)(6), we find that Ballard's allegations are sufficient to meet the requirements of the two-part Lugar test for establishing state action. As we have stated herein, a district court's dismissal on a Rule 12(b)(6) will be affirmed "only if it appears that no relief could be granted under any sets of facts that could be proven consistent with the allegations." Moore, 168 F.3d at 236. In the instant case, the first factor under Lugar is satisfied because Ballard proffers allegations that "a person for whom the State is responsible" caused the constitutional deprivation. Lugar, 457 U.S. at 937. Ballard makes various assertions in his complaint which, if taken as true, indicate that Judge Lambert exceeded the scope of her jurisdiction and abused her authority by imprisoning him until he paid his debt. Ballard alleges that (1) Judge Lambert told him that she called the Pujol law firm, but was informed that Percy would not release the bond; (2) Judge Lambert instructed him that he would have to pay $10,000 to keep from going to jail; (3) Judge Lambert instructed him that he could not use a bail bond or property bond, but would have to pay the $10,000 in cash; (4) Judge Lambert's secretary told his wife that the bond

13

payment had to be paid directly to Percy; and (5) he was only released from jail after his wife paid the $10,000 to Percy's secretary. These assertions, if true, sufficiently demonstrate a constitutional deprivation caused by the state. See Lugar, 457 U.S. at 937.

Under the second Lugar prong, a private party can be deemed a state actor if he or she is a "joint participant" with a state official in the offending enterprise. Id. at 931. To establish that the attorneys were joint participants in Judge Lambert's alleged offending enterprise, Ballard is required to demonstrate that the attorneys and the judge knowingly participated in the alleged conspiracy, in this instance, the operation of the debtor's prison. See Dennis, 449 U.S. at 28.

Upon review of the allegations pleaded in Ballard's complaint, we again find that his complaint sufficiently alleges facts that, if true, demonstrate that Judge Lambert and the attorneys conspired to violate Ballard's due process rights. Ballard alleges that (1) Percy told him that he would have to pay $10,000 in cash to stay out of jail; (2) after Judge Lambert telephoned the Pujol law firm, Percy informed the judge that he would not release the bond unless Ballard paid the $10,000 in cash; (3) Percy's secretary informed his wife that "the law" requires a person to be jailed if that person fails to pay his debt; (4) Percy's secretary informed Ballard that Percy had the power to order his bail released; and (5) Percy's secretary (upon Percy's instruction) telephoned the jail and authorized Ballard's release. We find that these allegations, if taken as true, sufficiently demonstrate that Judge Lambert and the attorneys conspired together to collect the money Ballard owed, or at a minimum, that Judge Lambert provided "significant aid" to the attorneys in their effort to collect the money Ballard owed to their client. See Lugar, 457 U.S. at 937.

Because Ballard has satisfied the requirements articulated by Lugar sufficiently to survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we

14

conclude that the district court erred in dismissing Ballard's claims against the attorneys. Accordingly, the district court's grant of the attorneys' motion to dismiss on this issue is reversed.

## CONCLUSION

For the foregoing reasons, the final judgment and order dismissing Ballard's §1983 claims against Judge Lambert on the basis that she is protected by judicial immunity is AFFIRMED; the judgment and order of dismissal against the attorneys on the basis that they were not state actors is REVERSED. Therefore, this case is REMANDED to the district court for proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.