# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 8, 2010

No. 09-20126

Charles R. Fulbruge III
Clerk

PAUL ALEXANDER BURNS,

Plaintiff-Appellant,

v.

HONORABLE K. MICHAEL MAYES, et al.,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Texas;
U.S.D.C. No. 4:07-cv-3814

Before GARWOOD, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Paul Alexander Burns ("Burns") appeals the district court's 12(b)(6) dismissal of his action asserting claims under 42 U.S.C. § 1983 and various state torts against K. Michael Mayes ("Judge Mayes"), a Texas judge for the 410th District, and Montgomery County ("the County"), as barred by judicial immunity and by *Monell*'s limitation on municipal liability, respectively. Burns sought damages as well as declaratory and injunctive relief.

On appeal, Burns assigns to the district court's ruling sixteen points of

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

error, which may be roughly classified as falling within three categories: (1) challenges to the district court's judicial immunity determination, its *Monell* determination, and its refusal to grant discovery before deciding same; (2) claimed violations of due process and other constitutional rights – including a claim under the Americans With Disabilities Act ("ADA") – arising from Burns's conditions of detention, the failure of the documents that set out the conditions of probation to give notice that these conditions may proscribe any contact with his family, the failure to give notice of the precise concentration of creatinine that constitutes a "diluted" urine sample, and the failure to hold a hearing in which the urinalyses and Burns's conditions of confinement could be challenged; and (3) challenges to the district court's failure to grant declaratory or injunctive relief.[1]

As we conclude that all of Judge Mayes's actions were taken in his role as the judge presiding over Burns's guilty plea and subsequent probation for the state jail offense of cocaine possession,[2] and that these acts were not taken pursuant to any policy or pattern of conduct attributable to the County, we AFFIRM.

## I.    Facts & Proceedings

We accept as true those well-pleaded facts contained in the complaint, and draw every reasonable inference in favor of the plaintiff.[3]  When, as here, the

---

[1] Some claims defy easy classification, including "[i]s SAP's [the drug-treatment protocol that specified the conditions of Burns's continued community supervision] science sound?" In addition, Burns challenges the district court's refusal to entertain his state tort claims.

[2]  Tex. Penal Code § 481.115(b)(possession of a controlled substance).

[3] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal marks and citations omitted).

plaintiff's chronology of events contains several significant lacunae, we "rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice,'"[4] such as the record of the proceedings in Burns's case before the 410th Judicial District Court of Montgomery County, Texas.

In March 2005, a law enforcement officer stopped Burns for speeding, an incident that ultimately lead to the discovery of cocaine in Burns's possession. He was charged with the state jail offense of possession of a controlled substance,[5] and his case was assigned to Judge Mayes of the 410th Judicial District Court of Montgomery County.[6] In February of the following year, Burns pleaded guilty, received deferred adjudication, and agreed to three years of community supervision (a term we shall use interchangeably with 'probation') in lieu of incarceration.[7]    In connection therewith, Burns signed and thumbprinted a document titled "Conditions of Community Supervision," which stated that a participant may be arrested and detained if he violates the terms of his community supervision.   One such provision prohibited him from consuming alcohol or narcotics, and another required periodic submission to

---

[4] *Davis v. Bayless,* 70 F.3d 367, 372 n.3 (5th Cir. 1995) ("Federal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss.") citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).  *Accord Bauer v. Texas*, 341 F.3d 352, 362 n.8  (5th Cir. 2003) (taking judicial notice of public court records not in dispute); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) (permitting judicial notice of a court's own records or those of the inferior courts).

[5] Tex. Pen. Code § 481.115(b) (possession of a controlled substance).

[6] *The State of Texas v. Paul Alexander Burns,* Cause No. 05-06-05814-CR.

[7] Tex. Code Crim. Proc. 42.12.

monthly urinalyses to verify conformity therewith. Among the conditions was included the warning that a diluted urine sample "will be presumed" to be a violation, with the consequence that community supervision "may" be revoked.

In the ensuing year, two urinalyses revealed that Burns had violated the terms of his probation. An early test – almost immediately after his period of probation began – indicated that Burns had taken an undisclosed narcotic pain medication (barred under the terms of his probation). Another test – just over a year later – revealed that Burns had ingested alcohol. Burns was not sanctioned following the first violation, but after the second violation he was immediately arrested and jailed for one week.[8] When Burns was released, Judge Mayes ordered him to complete a 30-day drug and alcohol treatment program, and a 60-day aftercare program, which Burns did successfully. As a condition precedent to the continuation of Burns's deferred adjudication and probation, however, Judge Mayes modified the term of Burns's community supervision by a court order that extended it for one year and required – in addition to the prior conditions – that Burns participate in a lengthy substance-abuse recovery program, "Stability Achievement Progress" (the "SAP Program"). Judge Mayes had developed[9] the SAP Program for the 410th District Court as

---

[8]   Burns does not challenge the fact or conditions of his detention on this occasion.

[9]   In his complaint, Burns concedes that the SAP Program is the invention of Judge Mayes, citing Judge Mayes's own explanation of the program from his website for the fact that "I [Judge Mayes] created a Drug and Alcohol Program in the 410th District Court. It is called the SAP Program. Our SAP Program was based in part on the form of the 'original' Drug Court in our County, but more so on what I observed about drug and alcohol defendants in court for 6 years as a presiding judge."

part of its drug-court protocol.[10] Burns signed and thumbprinted a copy of this order.

One of the conditions of the SAP Program – identical to Burns's original conditions of probation – stipulated that a diluted urine sample would be presumed to be a violation. The SAP Program also specified, however, that a diluted urine sample would result in immediate jail sanctions. Although this proviso for immediate jail sanctions did not appear in Burns's original terms of probation, he had been immediately jailed when a second urine sample tested positive for alcohol.

In July 2007, Burns submitted a urine sample that came back as "diluted." This was the first such result in more than a year of urinalyses. Consequently, Judge Mayes had Burns arrested and jailed, and ordered him to refrain from contact with family or friends during that incarceration, although visits with his attorney were permitted.[11] Burns's complaint alleges that he was never given notice that visits with or phone calls from friends and family might be prohibited as part of his detention. He also alleges that he was never given notice of the precise standard – measured in a milligrams per deciliter of creatinine in the urine – that would constitute a "diluted" sample, and that he suffers from naturally occurring low creatinine in his urine.[12]

---

[10] Tex. Health & Safety Code § 469.001(a)(1) (governing the creation and administration of drug courts). The SAP Program is the basis for Judge Mayes's drug court program.

[11] Although not included in Judge Mayes's order, the instruction that Burns not have visitors or phone calls was communicated in an instant message conversation, and a copy was appended to Burns's complaint.

[12] Burns apparently claims that periodically low levels of creatinine in his urine constitute a disability that should have been accommodated under

Later that month, Burns's attorney filed a writ of habeas corpus with the court, and Judge Mayes immediately scheduled a hearing for early August. Shortly thereafter, Judge Mayes learned from jail staff that Burns's family had visited him at the jail. Judge Mayes sent a probation officer to inform Burns personally that he could not have visitors or make or receive phone calls, but Burns nevertheless continued to telephone his family in the ensuing days. On the day before the scheduled habeas hearing, Burns's attorney requested a bond hearing, and a date for it was set for early September. Late in August, however, Judge Mayes amended Burns's conditions of community supervision again,[13] and released Burns from jail the following day.

That November, Burns filed this suit against Judge Mayes and the County. In May of the following year, the state filed a motion to adjudicate Burns's guilt and revoke his community supervision. The following month, a visiting judge, Judge James Keeshan, accepted Burns's plea bargain, in which he pleaded "true" to various violations of his community supervision, but did not plead "true" to submitting diluted urine samples. Burns was sentenced to 365-days in jail, with credit for time served while detained during his community supervision. He has since completed his sentence and is no longer subject to

---

the Americans With Disabilities Act of 1990, § 3(2)(C), 42 U.S.C. § 12102(2)(A)-(C) (defining a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment."). Although low creatinine is a symptom of several serious illnesses and conditions, Burns does not allege that he suffers from any of them.

[13] Judge Mayes modified Burns's probation to require that he wear an ankle-bracelet monitoring system, presumably because, while in jail, Burns had apparently told his wife that if he were released he would "run."

Judge Mayes's supervision or the SAP Program.

After filing his § 1983 suit in federal court, Burns amended his complaint in December 2007. In separate motions under Fed. R. Civ. P. 12(b)(6) and 12(b)(1), Judge Mayes and the County timely moved to dismiss the case. In March 2008, while these motions were pending, Burns moved to compel depositions of Judge Mayes and County officials. The district court denied this motion in a written opinion. Burns nevertheless sought production, which Judge Mayes and the County moved to stay. In July 2008, the district court stayed all deadlines in the case. The next week, Burns filed a motion to amend his complaint yet again. In September 2008, the district court, in two separate memoranda and orders, granted the defendants' motions to dismiss, but gave Burns the opportunity to re-plead his injunctive claims. Burns instead re-asserted his original claims and added more, without supplementing the original facts alleged. In February 2009, the district court dismissed all of Burns's claims against Judge Mayes and the County, and Burns timely filed a notice of appeal.

## II. Analysis

### A.    Standard of Review

We review a district court's 12(b)(6) dismissal of a complaint *de novo,*[14] and we review a district court's rulings on discovery for abuse of discretion.[15]

### B.    Judicial Immunity & *Monell* Immunity

As the Supreme Court recently instructed, "[t]o survive a motion to

---

[14] *Abraham v. Singh*, 480 F.3d 351, 354 (5th Cir. 2007).

[15] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("'Discovery matters are entrusted to the 'sound discretion' of the district court . . . .'") (quoting *Richardson v. Henry*, 902 F.2d 414, 417 (5th Cir. 1990)).

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[16] In *Ashcroft v. Iqbal,* the Court noted that, to assess whether the complaint alleges a sufficient factual predicate to support a §1983 claim, courts may "begin by taking note of the elements a plaintiff must plead" to state such claim.[17]

Judges of all stripes enjoy absolute immunity from suits for damages when the action complained of was taken in their judicial capacity, even if that action "was in error, was done maliciously, or was in excess of [their] authority."[18]  It is only for those nonjudicial actions or for actions that are taken "in the complete absence of all jurisdiction" that judges do not enjoy such immunity.[19]

For his complaint against Judge Mayes to survive, Burns had to allege facts directed at:

> (I)    whether the precise act complained of is a normal judicial function;
> (ii)    whether the acts occurred in a courtroom or appropriate adjunct spaces    as the judge's chambers;
> (iii)    whether the controversy centered around a case pending before the   court; and
> (iv)    whether the acts arose directly out of a visit to the judge in his official    capacity.[20]

---

[16] *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (internal quotation marks omitted).

[17]  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[18] *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed. 2d 331 (1978) (re-stating that "the doctrine of judicial immunity was applicable in suits under . . .  42 U.S.C. § 1983") (internal citations omitted).

[19] *Ballard v. Wall,* 413 F.3d 510, 515 (5th Cir. 2005) (citing *Mireles v. Waco,* 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

[20] *McAlester v. Brown,* 469 F.2d 1280, 1282 (5th Cir. 1972).

Not only has Burns failed in that regard, but he has utterly failed to identify even a scintilla of evidence that Judge Mayes's actions were taken in anything but his capacity as the judge charged with adjudicating and overseeing the terms of Burns's probation as a defendant properly appearing in the court that had jurisdiction over him and his case. Burns's unsupported, conclusional assertions that Judge Mayes acted in an "administrative" or "ultra vires" capacity are therefore unavailing.[21] In addition, the very fact that Burns has served his time and is no longer chafing against the conditions of community supervision imposed by Judge Mayes supports the district court's dismissal of his claims for declaratory and injunctive relief on grounds of mootness.[22]

Similarly, for his suit against the County to survive, Burns must have pleaded facts to support his contention that the SAP Program constituted "the execution of an official policy or custom of the municipality"[23] that caused the constitutional injury that he claims. We have defined a "policy or custom" to be either:

1.    A policy statement, ordinance, regulation, or decision that is

---

[21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a pleading that offers merely "labels and conclusions . . . will not do.").

[22] *Soc. of Separationists, Inc., v. Herman,* 959 F.2d 1283, 1286 (5th Cir. 1994) ("This court and others have often held that plaintiffs lack standing to seek prospective relief against judges because the likelihood of future encounters is speculative."). *Accord, Schepp v. Fremont County,* 900 F.2d 1448, 1452-53 (10th Cir. 1990) (dismissing § 1983 suit against state judge who revoked plaintiff's probation and holding no actual controversy existence to warrant declaratory relief because of the extreme unlikelihood that plaintiff would ever be subject to probation revocation proceedings before that judge again).

[23]    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.    A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.    Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. [24]

As the district court correctly noted, "[a] local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county."[25]  The overwhelming majority of the facts advanced by Burns firmly establishes that the SAP Program was designed by Judge Mayes in his capacity as a Texas state judge responsible for one of the state's drug-court programs.   Despite this truism, Burns nevertheless claims that the SAP Program is a policy of the County because (1) County law enforcement officers carried out Judge Mayes's orders, (2) a description of the SAP Program appears on a County website, and (3) a description of the SAP Program on Judge Mayes's website bears the copyrights of both Judge Mayes *and* the County.  Setting aside the fact that the County's copyright appears to refer only to the web page template that hosts Judge Mayes's website, Burns elsewhere cites a description of the SAP Program as one "created" by Judge Mayes "in the 410th District Court."  As a protocol of the 410th Judicial District applicable to criminal

---

[24] *Bennet v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).

[25] *Kruegre v. Remier,* 66 F.3d 75, 77 (5th Cir. 1995) (per curiam) (citations omitted).

defendants appearing before a judge of the 410th Judicial District, the SAP Program is clearly a state judicial policy, not a County policy. The fact that the County's law enforcement officers carried out Judge Mayes's orders is of no moment. For identical reasons, Burns has not adduced facts which suggest that the SAP Program is a "persistent widespread practice" that may be properly attributed to the County.

Because it had dismissed Burns's federal claims, the district court also declined to hear Burns's various state claims. This was well within the court's discretion because "[a] district court may decline to exercise supplemental jurisdiction over state-law claims if the court has dismissed all claims over which it ha[d] original jurisdiction."[26]

As the foregoing makes abundantly clear, Burns has not "plead[ed] the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] The rulings and orders of the district court in this case are, in all respects,

AFFIRMED.

---

[26] *Toney v. Shopmeyer,* 146 F.3d 867 (5th Cir. 1998) (per curiam) citing *Noble v. White,* 996 F.2d 797, 799 (5th Cir. 1993).

[27] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).