# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 15, 2013

No. 12-30532

Lyle W. Cayce
Clerk

BRIAN K. GLOTFELTY,

Plaintiff-Appellant

v.

TAMMY KARAS; RYAN RICHARD; JACK STRAIN, JR., in his official
capacity as Sheriff for the Parish of St. Tammany; CRAIG HART;
UNIDENTIFIED PARTIES,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:11-cv-02849

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff Brian Glotfelty filed suit against multiple defendants seeking to
recover under both federal and state law for damages he allegedly suffered as a
result of what he claims was an erroneous arrest.  After concluding that
Glotfelty's allegations did not state a claim for relief under federal law, the
district court dismissed all federal claims, and declined to exercise supplemental

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-30532

jurisdiction over the remaining state law claims. Glotfelty now appeals, arguing that the district court erred in dismissing his federal claims. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The events surrounding Glotfelty's arrest arose in relation to an acrimonious divorce proceeding in Louisiana state court involving Ryan Richard ("Richard") and Stacey Richard. Richard's divorce petition alleged that Glotfelty was engaged in an adulterous relationship with Stacey Richard. Accordingly, Richard's counsel requested the issuance of a subpoena and notice of deposition directing Glotfelty to appear on September 30, 2010, for the purpose of being deposed in connection with the divorce proceeding.

After the deposition later was continued by the parties' consent, Richard's counsel requested a second subpoena. Glotfelty's complaint alleges, however, that the sheriff was unable to serve the second subpoena before the related deposition date, as it lacked an apartment number. A third subpoena thus issued, indicating that Glotfelty's deposition had been rescheduled for November 9, 2010. A special process server filed an affidavit into the record in the Richard divorce proceeding stating that he personally served Glotfelty the subpoena on November 2, 2010. Glotfelty denies that he ever received it, however, and there is no return on the subpoena in the record. Glotfelty also notes that the record reflects that the subpoena had been defaced, in that the address of Richard's original counsel—who by then was no longer representing Richard—was scratched out and replaced with the address of defendants Craig Hart and Tammy Karas, who were then serving as Richard's counsel.

Glotfelty failed to appear at the deposition set for November 9, 2010. Consequently, Hart and Karas filed in state court a rule for contempt, requesting that the court issue an attachment for Glotfelty to be brought to court on December 9, 2010, to show cause as to why he should not be held in contempt.

2

No. 12-30532

After reviewing the rule for contempt, a state court judge ordered that an attachment for Glotfelty's arrest be issued in connection therewith. An affidavit later filed by a process server indicates that the rule for contempt was personally served to Glotfelty on December 2, 2010, but there is no return in the record related to the document. Indeed, Glotfelty denies that he ever received the actual rule for contempt or the related attachment order. Rather, he claims that he received only an associated order indicating that a show cause hearing had been set; the upshot thus was that while he knew of the hearing, he allegedly was unaware that an attachment for his arrest also had issued.

Prior to the date set for the contempt hearing, Hart and Karas issued a fourth subpoena and notice of deposition scheduled for December 2, 2010. Glotfelty responded with a motion to quash, which precipitated a telephone conference on December 2, 2010, with a state court judge. During that conference, Glotfelty's deposition was reset for December 16, 2010, but no mention was made of the outstanding attachment order. For this reason, Glotfelty claims to have remained ignorant of the attachment—a state that he asserts was compounded by the fact that neither he nor his lawyer could view the record in Richard's divorce proceeding, because that record was alleged to have been improperly sealed. Glotfelty further avers that neither Hart nor Karas ever advised his attorney that an attachment for Glotfelty's arrest had issued.

On Saturday, December 4, 2010, five days before the scheduled contempt hearing, Glotfelty was arrested pursuant to the attachment order by an unidentified officer of the St. Tammany Parish Sheriff's Office ("STPSO"). Glotfelty claims to have been handcuffed, fingerprinted, and "held for an unreasonable lengthy period of time." He eventually was released without charge after posting a $500 cash bond. A state court judge subsequently granted

3

No. 12-30532

Glotfelty's motion to vacate the attachment order, and the parties conducted, as scheduled, the deposition set for December 16, 2010.

Based on the events surrounding the attachment order and his arrest, Glotfelty filed the complaint in the instant action, naming as defendants attorneys Hart and Karas; "XYZ Insurance Company," the unidentified professional liability insurer of Hart and Karas; "John Doe," the unidentified officer who arrested Glotfelty; and Sheriff Jack Strain, Jr., in his official capacity as Sheriff for the Parish of St. Tammany. In essence, Glotfelty maintained that the attachment for his arrest was obtained, issued, and executed in violation of his rights under the United States Constitution and Louisiana law. Accordingly, he sought damages under 42 U.S.C. §§ 1983 and 1988 and, in the alternative, under Louisiana law for negligence, wrongful arrest, false imprisonment, and intentional infliction of emotional distress. Hart and Karas subsequently filed a motion to dismiss pursuant to Rule 12(b)(6). After considering the motion and Glotfelty's opposition to the same, the court dismissed with prejudice Glotfelty's federal claims against Hart and Karas. Additionally, it *sua sponte* dismissed with prejudice Glotfelty's federal claims against all other defendants. After declining to invoke its discretionary authority to exercise supplemental jurisdiction over the remaining state law claims, the district court ordered them dismissed without prejudice. Glotfelty now appeals, arguing that the court improperly dismissed his federal claims.

## II. STANDARD OF REVIEW

We review de novo a district court's dismissal under Rule 12(b)(6) for failure to state a claim. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). "When considering a Rule 12(b)(6) motion, we liberally construe the complaint in favor of the plaintiff and accept all well-pleaded factual allegations as true." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

No. 12-30532

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely *consistent with* a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (emphasis added) (internal quotation marks and citation omitted).

### III. ANALYSIS

Glotfelty's lawsuit rests upon his belief that the events surrounding his arrest were unlawful and were perpetrated as part of a conspiracy between Richard, who Glotfelty alleges was an employee or deputy of the STPSO, and the remaining defendants. To support his theory, Glotfelty claims that in requesting, obtaining, and seeking enforcement of the allegedly unlawful attachment order, Hart and Karas acted at the direction of Richard. Further, Glotfelty notes that Hart was himself appointed a mayor's court judge in Louisiana, and that he previously had been employed by the St. Tammany Parish District Attorney's Office. Glotfelty submits that Richard and Hart therefore had a "close connection" to law enforcement and, in particular, the STPSO. According to the complaint, this connection made it "more than coincidental that the wrongfully issued ex-parte attachment was executed by the STSPO through Doe shortly after its issuance."

In dismissing Glotfelty's federal claims against Hart and Karas, the district court concluded that Glotfelty's complaint did not state a plausible allegation that the private attorneys acted under color of state law, as required by § 1983. Similarly, the court held that Glotfelty failed to plausibly allege that Richard used state authority to deprive Glotfelty of any constitutional right. As for the defendant denominated "John Doe," the court concluded that he was not

a party to the action, as he had not voluntarily appeared, and had not been properly served with notice of the suit. Finally, in connection with Sheriff Strain, the court held that § 1983 does not support liability under the theory of *respondeat superior*, and to the extent Glotfelty alleged that Sheriff Strain improperly trained, supervised, disciplined, or controlled officers in the STPSO, or that he instituted improper policies and procedures, such allegation were too vague to survive a motion to dismiss. As noted, Glotfelty challenges these rulings.

## A. Applicable Law

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012) (quoting 42 U.S.C. § 1983). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Where a plaintiff brings a § 1983 action against a state official, the requirement to show that the defendant acted "under color of state law" is satisfied by demonstrating "state action" under the Fourteenth Amendment. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Similarly, for a private actor to be held liable under § 1983, the challenged conduct must be "fairly attributable to the State." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) (quoting *Lugar*, 457 U.S. at 937). This means "the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 423 (5th Cir.), *cert. denied* 543 U.S. 829 (2004). A

plaintiff can make such a showing by demonstrating that "the private citizen was a 'willful participant in joint activity with the State or its agents.'" *Id.* at 420 (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

## B. Claims Against Hart and Karas

We begin our inquiry into whether the conduct of Hart and Karas may be "fairly attributable to the State . . . . by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-51 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). On this score, Glotfelty advances two arguments. First, he claims that Hart and Karas acted under color of state law by invoking Louisiana law and relying on governmental authority to request, obtain, and pursue enforcement of the allegedly unlawful attachment order. Second, Glotfelty argues that Hart and Karas were willful participants acting in concert with Richard, Doe, and the STPSO to effect an unconstitutional arrest of Glotfelty.

We may expeditiously dispose of Glotfelty's first claim. A private party does not act under color of law simply by invoking state authority. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (explaining that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with" governmental officials); *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1078-79 (5th Cir. 1985) ("The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action."). Indeed, in the specific scenario presented here of an attorney advocating for a client, we previously have held that even "[i]f a judge reaches a decision based on misinformation that counsel provides, the issuance of the decision does not imply that counsel acted under color of state law." *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 353 (5th Cir. 2003). Simply put, Hart and Karas did not transform themselves into state actors merely by relying on Louisiana's legal

system to pursue their representation of Richard.  As the district court noted, to hold otherwise would lead to the absurd conclusion that every person who seeks redress through the legal system acts under color of state law.  *See Lugar*, 457 U.S. at 937 (explaining that without the "state action" limitation in § 1983 cases, "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them").

We therefore turn our attention to Glotfelty's claim that Hart and Karas collaborated with Richard, Doe, and the STPSO to perpetrate an unlawful arrest of Glotfelty.  As alluded to above, a private citizen may be held liable under § 1983 where the plaintiff alleges "that the citizen conspired with or acted in concert with state actors."  *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989).  For a claimant to successfully press such a suit, he "must allege:  (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights."  *Priester*, 354 F.3d at 420.  "Allegations that are merely conclusory, without reference to specific facts, will not suffice."  *Id.*  More particularly, where the plaintiff claims that a private party acted under color of law as part of a conspiracy to effect an unlawful arrest, we consistently have held that he must demonstrate the existence of a "preconceived plan" for the authorities to arrest the person without investigation, "merely because he was designated for arrest by the private party."  *Sims*, 778 F.2d at 1079; *see also Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982) (a plaintiff must prove a "'customary' or 'pre-existing' arrangement between" the private party and the police to detain suspected shoplifters); *Smith v. Brookshire Bros.*, 519 F.2d 93, 94 (5th Cir. 1975) (a plaintiff must show that the private party had a "customary plan" by which the police would effect detentions like the one then at issue), *cert. denied*, 424 U.S. 915 (1976).

No. 12-30532

Here, to convert Hart and Karas into the equivalent of state actors based on their role in his arrest, Glotfelty thus needed to allege facts demonstrating that there was a "preconceived plan" for Richard, Doe, and the STPSO to arrest Glotfelty simply because Hart and Karas designated him for arrest. On this front, Glotfelty's complaint stated principally as follows:

> On information and belief, due to the close connection of HART and/or RICHARD to law enforcement, specifically, the [STPSO], and despite the fact that in excess of 46,492 warrants were waiting to be served which included 28,733 arrest warrants for failure to appear and contempt of court were unserved in St. Tammany Parish, it seems more than coincidental that the wrongfully issued ex-parte attachment was executed by the STPSO through DOE shortly after its issuance and GLOTFELTY, who had no prior record nor any arrests, was arrested from his home on a Saturday morning and brought to jail despite the fact that the attachment stated that he was to be brought to Court on December 9, 2010.

Therefore, the facts alleged were that: (1) Hart and Richard were closely connected to law enforcement;[1] (2) thousands of warrants were awaiting execution in St. Tammany Parish when Glotfelty was arrested; (3) Glotfelty's attachment order was executed shortly after its issuance, even though he had no prior record or arrests; (4) the arrest took place on a Saturday morning; and (5) the arrest occurred earlier than it should have, and resulted in Glotfelty's transfer to the police station rather than the courthouse.

Even when liberally construed in Glotfelty's favor, these facts do not allow us reasonably to draw an inference that Hart and Karas willfully acted in concert with Richard, Doe, and the STPSO to effect an unconstitutional arrest of Glotfelty. First, as the district court correctly explained, there is no allegation—as required under *Sims*—of a preconceived plan between the

---

[1] As noted earlier, Glotfelty's complaint elsewhere alleged that Richard was an employee or deputy of the STPSO, and that Hart was a mayor's court judge who previously had been employed by the St. Tammany Parish District Attorney's Office.

9

defendants to have Glotfelty unlawfully arrested merely because Hart and Karas designated him for arrest.  Indeed, Glotfelty's complaint acknowledges that a state court judge issued the attachment order, which is inconsistent with such a theory.  More generally, Glotfelty's factual allegations are insufficient to raise a right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555 ("The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." (alterations and citation omitted)).  Glotfelty implies in his complaint that, because the circumstances surrounding his arrest "seem[] more than coincidental," a conspiracy must have existed.  But this claim is no more than "a conclusory allegation of agreement," which the Supreme Court dismissed as insufficient in *Twombly*.  *Id.* at 556-57; *see also Priester*, 354 F.3d at 420.  Although, to be sure, Glotfelty's factual allegations would *support* a finding of an agreement between the defendants to arrest him, as already noted, it is not enough to plead facts that merely are consistent with the defendants' liability.  *Iqbal*, 556 U.S. at 678.  Simply put, Glotfelty's complaint does not allege specific facts that would support a finding that Hart and Karas were willful participants in joint activity with the state or its agents.

Furthermore, we note that the authority on which Glotfelty relies, *Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005), is not to the contrary.  As here, we considered in *Ballard* the propriety of a district court's dismissal under Rule 12(b)(6) of a plaintiff's § 1983 suit.  413 F.3d at 512.  There, the plaintiff alleged that his constitutional rights were violated when private attorneys conspired with a state court judge to keep the plaintiff in jail until he paid certain debts.  *Id.*  The district court dismissed the claims against the attorneys after concluding that the plaintiff did not establish that they were engaged in "state action."  *Id.* at 518.  We reversed, holding that the allegations pleaded in the plaintiff's complaint sufficiently stated facts supporting the finding that the

attorneys conspired with the judge to violate the plaintiff's due process rights. *Id.* at 519. Significantly, however, we reached this conclusion only after explaining that the complaint alleged that the judge had not ordered the plaintiff jailed until after she initiated a telephone conversation with one of the defendant attorneys. *Id.* Here, as we already have noted, Glotfelty pleaded no similar facts that would support finding an agreement between the defendants to violate his constitutional rights.

Accordingly, we affirm the district court's conclusion that Glotfelty did not advance a plausible claim that Hart and Karas acted under color of law and, by extension, that he did not sufficiently plead a claim against them arising under § 1983.[2]

## C. Claims Against Richard

The reasoning that leads us to affirm dismissal of Glotfelty's claims against Hart and Karas also supports the district court's dismissal of the claims against Richard. More particularly, although Glotfelty alleged that Richard was an employee or deputy of the STPSO, he did not set forth any specific facts indicating that Richard's position facilitated the asserted constitutional deprivations, or that they were made possible only by virtue of Richard's alleged employment. *See West*, 487 U.S. at 49; *Miss. Women's Med. Clinic v. McMillan*, 866 F.2d 788, 792 (5th Cir. 1989) ("In deciding whether there has been the state action necessary to support a claim under § 1983, we have required that the state official *affirmatively act* in support of the violation."). To the contrary, because a state court judge issued an attachment order against Glotfelty, law enforcement easily could have executed the order without Richard's participation. Further, just as with Hart and Karas, Richard's reliance on Louisiana law to seek the attachment order in the first place does not make him

---

[2] As a result, we likewise affirm dismissal of claims against "XYZ Insurance Company," the unidentified professional liability insurer of Hart and Karas.

a state actor subject to liability under § 1983. *See Dennis*, 449 U.S. at 28. Finally, to the extent Glotfelty implies that Richard's liability derives from his joint participation in a conspiracy with state actors, we conclude that no specific facts pertaining to such an allegation exist in Glotfelty's complaint. *Priester*, 354 F.3d at 420.

## D. Claims Against Sheriff Strain

As to the claims against Sheriff Strain, Glotfelty alleged that his arrest "by Doe was improper, lacked probable cause, or any legal basis, and was in violation" of federal and state law.[3] The complaint averred that Sheriff Strain is liable under a theory of *respondeat superior* for any acts and omissions committed by STPSO employees in the course and scope of their employment, including those undertaken in connection with Glotfelty's attachment. Glotfelty further alleged that Sheriff Strain is liable under § 1983 "as a result of inadequate training of deputies and as a result of policies and procedures [he] put into place . . . which clearly allowed for the unlawful arrest and imprisonment of [Glotfelty] when the attachment required him to be brought to Court." We agree with the district court that these allegations cannot survive a motion to dismiss.

To the extent Glotfelty alleged that Sheriff Strain, in his official capacity, is liable under § 1983 based on the theory of *respondeat superior*, the Supreme Court has rejected similar claims, holding "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also*

---

[3] With respect to any claims against Doe, we note that "the mere naming of a person through use of a fictitious name does not make that person a party absent voluntary appearance or proper service of process." *Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987). Relying on this authority, the district court concluded that Doe was not a party to this action. Because Glotfelty has not briefed any error regarding this ruling, he has abandoned any such claim. *See Campillo v. U.S. Penitentiary Beaumont, Tex.*, 203 F. App'x 555, 556 (5th Cir. 2006) (citing *Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987)).

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Moreover, insofar as Glotfelty asserted that Sheriff Strain inadequately trained and supervised his deputies, or that he instituted improper policies and procedures, we agree with the district court that Glotfety's allegations on this front are too vague and conclusory to survive a motion to dismiss. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Accordingly, we affirm the dismissal of Glotfelty's federal claims against Sheriff Strain.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment in all respects.