United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 7, 2004**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 9, 2004
**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-60750

EVE PRIESTER, Individually and as next friend of Her Son
Terry L. Priester,

Plaintiff-Appellant,

versus

LOWNDES COUNTY; ET AL.,

Defendants,

LOWNDES COUNTY SCHOOL DISTRICT; SAMMY TOWNSEND,
in his capacity as the Superintendent of Education, Lowndes County
School District; NEW HOPE HIGH SCHOOL; MIKE HALFORD,
in his individual and representative capacity as principal, New Hope High School;
RICK CAHALANE; in his individual and representative capacity as coach
at New Hope High School; DALE HARDIN, in his individual and representative
capacity as coach at New Hope High School; KENT FARRIS, in his individual
and representative capacity as coach at New Hope High School; DANNY
BROWNING; LUNDY BRANTLY, in his individual and representative
capacity as coach at New Hope High School;

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi

Before HIGGINBOTHAM, STEWART, and PRADO Circuit Judges.

CARL E. STEWART, Circuit Judge:

This civil rights appeal stems from a racially motivated attack, during a high school football practice, resulting in a serious eye injury. Eve Priester, individually and as next friend of her son, Terry Priester, brought this action against the Lowndes County School District, the New Hope High School Columbus, Mississippi, the school district superintendent, and the high school's principal and football coaches, in their individual and representative capacities, alleging that the defendant's acts and omissions amounted to a conspiracy between the assailant and coaches to deprive the appellant of his federal rights under 42 U.S.C. § 1983 and various state tort laws. The defendants moved for summary judgment and the district court granted the motion upon a finding of an absence of state action. For the reasons set forth below, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Taken in the light most favorable to the plaintiff, the facts are as follows. On September 14, 1999, Terry,[1] an African-American tenth-grade student at New Hope High School, sustained a serious eye injury during football practice allegedly caused by a white teammate Eli Ward ("Ward"). Leading up to the injury, Ward slapped Terry on the back of the head and derided him in the locker room and during warm-up drills on matters such as his weight and race. On previous occasions, the head football coach Rick Cahalane ("Cahalane") subjected Terry to numerous racial epithets and derogatory comments concerning his weight.[2] After hearing such comments from Cahalane, Ward used the same derogatory terms toward Terry. The day of the injury, Ward also approached Terry

---

[1] For the purpose of clarity, hereinafter "Priester" will be used to refer to the claimant Eve Priester, and where applicable, her son will be denoted by his first name "Terry."

[2] The record shows that Terry Priester was subjected to such derogatory terms as "nigger" and "fat black ass."

and, without provocation, hit him on the helmet with a rock. Terry was also hit in a similar manner by another fellow player. Cahalane allegedly heard the statements and witnessed the assaults, but he did nothing to protect Terry or take the necessary actions that could stop or prevent the recurrence of the incident. Terry's mother witnessed these events and immediately informed the high school principal, who said he would handle the problem in the morning.

In the midst of a full-contact drill during football practice, the injury occurred subsequent to Terry's successful block of Ward. In response, Cahalane walked over to Ward to "get on to him" about the previous play. While Cahalane and Ward talked, Ward apparently looked at Terry throughout the conversation. Immediately following the conversation, Ward told Terry that he "had something for him." On the next play from scrimmage, Terry alleges that Ward lunged toward him, thrust his hands through his helmet, and gorged his eye. Terry's injury resulted in permanent damage including a torn right lower eyelid, a laceration to his lower punctum and caniliculus (tear duct), chronic tearing, and blurry vision. The school's response was two-fold. First, upon interviewing the coaches and players, New Hope High School principal Mike Halford compiled a report of the incident. In the report, however, no one admitted seeing anyone hit Terry. Second, the school declined to pay Terry's medical bills.

On January 8th, 2001, Eve Priester, individually and as the next friend of her son Terry Priester, pursuant to section 1983, filed suit in federal district court against Lowndes County School District, Sammy Townsend, in his capacity as the Superintendent of Education of the Lowndes County School District, New Hope High School, Mike Halford, in his individual and representative capacity as principal, New Hope High School, Rick Cahalane, Dale Hardin, Kent Farris, Danny Browning, and Lundy Brantly in their individual and representative capacities as coaches at New

3

Hope High School (collectively, "school officials").[3]  Priester alleged an agreement between Ward and the coaches to deprive her son of his rights under the Due Process and Equal Protection Clauses of the U.S. Constitution's Fourteenth Amendment.[4]  Additionally, she alleged state-law claims of negligence and intentional torts resulting in emotional distress and physical injury.

On February 2, 2001, Priester amended her complaint to include Ward as a defendant, alleging that Ward, motivated by racial animus, subjected Priester to physical and verbal assaults.  Ward moved for a Rule 56 summary judgment to dismiss the claim.  On August 15, 2001, Ward was dismissed as a defendant by order of the district court because he was not a state actor under Section 1983 and the one-year statute of limitations tolled on September 14, 2000, for the applicable Mississippi tort.

The remaining defendants moved for summary judgment arguing, *inter alia*, that Priester failed to allege any state action to support her section 1983 claim.  The district court granted the defendants' motion finding no requisite fair attribution or special relationship between the school and Priester, and thus, an absence of state action to support a section 1983 claim.  The district court dismissed the remaining state law claims without prejudice.  Priester timely filed a notice of appeal.

## STANDARD OF REVIEW

This court reviews a district court's conclusion, under Rule 12(b)(6), that a plaintiff failed to state a claim upon which relief may be granted de novo.  Jones v. Greninger, 188 F.3d 322, 324 (5th

---

[3] Eve Priester's initial suit also included Lowndes County as a defendant, but upon her motion, Lowndes County was dismissed as a defendant on January 30th, 2001.

[4] Although the district court did not construe Eve Priester's complaint as asserting an equal protection claim, she raises this issue on appeal, arguing that New Hope High School did not pay for her son's medical expenses nor did the school respond to their complaints of racial harassment.

4

Cir. 1999). A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted. Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). The complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true. Id. The determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim. Jones, 188 F.3d at 324. Therefore, this court will not dismiss a plaintiff's claim, "unless the plaintiff will not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in his complaint." Id.

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)(internal quotations and citations omitted). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. See Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999).

DISCUSSION

5

The issues raised on appeal are whether the district court: (1) erred in dismissing Ward based on his state law one-year statute of limitations for intentional torts; (2) erred in granting the school officials' summary judgment motion under section 1983 based on a finding of no state action; and (3) abused its discretion in refusing to exercise supplemental jurisdiction over the remaining state law claims. We will address each issue in turn.

I. Dismissal of Ward Pursuant to State Statute of Limitations

On appeal, Priester contends that the district court erred in dismissing the former defendant Ward under the one-year statute of limitations for an intentional tort, rather than a theory of negligence. Specifically, Priester argues that the three-year statute of limitations should apply, instead of a one-year statute of limitations, because of both the civil rights nature of this case and the policy of not allowing states to circumvent section 1983 by adopting shorter statute of limitations standards. A close scrutiny of the record, however, reveals that Priester has misconstrued the district court's opinion dismissing the claims stemming from Ward's actions. The district court dismissed Ward as a defendant on two theories; the intentional tort claims were dismissed pursuant to the one-year statute of limitations, while the section 1983 claims were dismissed for lack of state action.

A. Intentional Tort Claims

We find that the district court correctly construed Priester's amended complaint as stating a claim under an intentional tort theory rather than a negligence theory. Priester's complaint states that Ward's alleged actions, "Ward put both of his hands through Priester's helmet and planted his finger in Terry Priester's eye and pulled it as hard as he could," are in the form of an intentional tort rather than negligence. Under the applicable state statute, intentional torts have a one-year statute of

6

limitations period.[5] Thus, the district court correctly found that Priester's claim stated an intentional tort, and that the applicable statute of limitations had run because the amended complaint was filed on February 2, 2001, well over a year from September 14, 1999, the date upon which the alleged injuries occurred during football practice.

B. Section 1983 Claims

To state a cause of action under section 1983 the appellant must allege that the person who deprived him of a federal right was acting under color of law. Cinel v. Connick, 15 F.3d 1338, 1342 (5th Cir. 1994). For a private citizen, such as Ward, to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors. Mylett v. Jeane, 879 F.2d 1272, 1275 (5th Cir. 1989).

This court has held that a non-state actor may be liable under 1983 if the private citizen was a "willful participant in joint activity with the State or its agents." Cinel, 15 F.3d at 1343. The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. Id. Allegations that are merely conclusory, without reference to specific facts, will not suffice. Brinkman v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986). The district court correctly determined Priester's complaint failed to allege a conspiracy. The complaint alleges that the coaches either ignored or "encouraged and/or allowed" Ward's behavior; however, the complaint does not allege an agreement between Ward and the coaches to commit an

_____

[5] Mississippi Code § 15-1-35 provides:

All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

7

illegal act, nor does it allege specific facts to show an agreement.  Therefore, we uphold the district

court's dismissal of Ward for failure to state a claim under Rule 12(b)(6).

## II. Dismissal of School District Officials Under Section 1983

Priester also argues that under section 1983, the district court erred in granting summary

judgment to the defendants on two accounts.  First, Priester alleges that the school officials failure

to protect Priester from violence during a school activity violates the Due Process clause.[6]  Second,

Priester contends that the school officials' use of racial epithets and their refusal to both pay for her

son's medical expenses and respond to her complaints of racial harassment deprives Priester of his

clearly established rights, and thus, violates the Equal Protection clause.[7]

A.      Substantive Due Process

Pursuant to the Due Process Clause, Priester argues that the district court erred in summarily

dismissing her claim as failing to have the requisite state action.  To state a claim under section 1983,

a plaintiff must:  (1) allege a violation of rights secured by the Constitution of the United States or

laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a

person acting under color of state law.  McKinney v. Irving Ind. Sch. Dist., 309 F.3d 308 (5th Cir.

2002).  As for the first prong of McKinney, Priester's allegations indicate that her complaint falls

under the substantive component of the Due Process Clause.  See Lefall v. Dallas Indep. Sch. Dist.,

---

[6] In her reply brief, Eve Priester also argued that her son was entitled to protective services because he attended New Hope High School under a desegregation order.  The court declined to address this claim because an appellant abandons all issues not raised and argued in its initial appellate brief.  Cousin v. Trans. Union Corp., 246 F.3d 359, 373 n.22 (5th Cir.), cert. denied 122 S. Ct. 346 (2001).

[7] The district court's opinion did not construe Priester's complaint to state a claim under the Equal Protection Clause.

8

28 F.3d 521, 526 (5th Cir. 1994) (finding a substantive due process claim when the plaintiff alleged that the state had a duty to provide students protection from injury at a school dance). Thus, the district court correctly construed Priester's allegations that the coaches and school officials failed to protect Priester from the attack, as essentially a claim under the substantive component of the Due Process Clause.

As for the second prong of McKinney, because the Fourteenth Amendment protects liberty and property interests only against invasion by a state, a section 1983 plaintiff, alleging the deprivation of Due Process under the Fourteenth Amendment, must also show that state action caused his injury. Bass v. Parkwood Hosp., 180 F.3d 234, 241 (5th Cir. 1999). In such cases, the "under color of law" and state action inquiries merge into one. Id. This court has consistently held that "the right to be free of state-occasioned damage to a person's bodily integrity is protected by the [F]ourteenth [A]mendment's guarantee of due process." Doe v. Taylor Ind. Sch. Dist., 15 F.3d 443, 450-51 (5th Cir. 1994); Petta v. Rivera, 143 F.3d 895 (5th Cir. 1998) (finding that a constitutional right under the Due Process Clause requires more than merely a non-physical harm to give rise to a constitutional tort). Considering that the bodily integrity of Terry was indisputably damaged by Ward's act, he suffered an unquestionable harm to his property. The issue in this case, therefore, is whether the harm to Terry's property was caused by state action.

As a general rule, the state's failure to protect an individual from private violence does not violate the Due Process Clause. Deshaney v. Winnebago County Dep't. of Social Servs., 489 U.S. 189, 195 (1989) (Holding that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."). This court has clearly held, that absent "certain limited circumstances," substantive due process "does not

9

confer an entitlement to governmental aid as may be necessary to realize the advantages of liberty guaranteed by the Clause." Walton v. Alexander, 44 F.3d 1297, 1302 (5th Cir. 1994). Therefore, for Priester to overcome the district court's grant of summary judgment in favor of the defendants, she must show that the alleged harm to her son fits one of those "certain limited circumstances."

   i. *Special Relationship Exception*

Priester contends that the coaches were effectively state actors because a "special relationship" exists between students and teachers, and thus, the coaches were cloaked with a certain public trust and responsibility to protect her son from harm. We have recognized that when the "special relationship" between the person and the state imposes upon the state a constitutional duty to protect that individual from known threats of harm by private actors, this circumstance constitutes an exception to the general rule that a state has no affirmative duty to protect an individual from private violence. Walton, 44 F.4d at 1299; see also McKinney, 309 F.3d at 313 (stating that the "special relationship" exception "only arises when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power").

The special relationship exception, however, has been narrowly construed when applied to school sponsored activities. This court has held that no such special relationship exists between a school district and its students during a school sponsored activity "held outside the time during which students are required to attend school for non-voluntary activities." Lefall, 28 F.3d at 529. In Lefall, an eighteen-year-old student, named Dameon Steadham, was fatally shot by random gunfire in the parking lot of a public high school after a school dance. Id. at 523. The court reasoned that no special relationship existed between the student and the school, because although the student may

10

have been "compelled to attend school during the day, any special relationship that may have existed lapsed when compulsory attendance ended." Id. at 530. In other words, "the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." Deshaney, 489 U.S. at 201.

In the present case, Priester's claim that lack of supervision during football practice is gross negligence wrongfully rests upon a characterization of the State as a permanent guarantor of a student's safety. It is undisputed that Terry's injuries did not occur during regular school hours, when students are arguably compelled to attend public schools. Rather, Terry's injury occurred after regular school hours during football practice, and thus, at the time his injuries occurred, no special relationship existed between him and the school. Moreover, Priester fails to show that her son was compelled or restrained against his will. High school football practice is a voluntary extra-curricular activity, and thus, Priester cannot claim that her son was in anyways compelled by the school to participate. Priester has cited no relevant case law which supports her special relationship claims. Therefore, because no special relationship exists between a school district and its students during a school-sponsored football practice held outside of the time during which students are required to attend school for non-voluntary activities, the district court did not err in finding no requisite state action under section 1983.

ii. *State-Created Danger Exception*

In her initial complaint, Priester also argued that the school officials were deliberately indifferent to her complaints and the incidents she witnessed.[8] Previously, we have clearly stated that this court has neither adopted nor rejected the state-created danger theory. McKinney, 309 F.3d at

---

[8] The district court did not address Priester's deliberate indifference argument.

11

313; <u>Mclendon v. City of Columbia</u>, 285 F.3d 1078 (5th Cir. 2001). Under the state-created danger theory, under which a state actor who knowingly places a citizen in danger may be accountable for the foreseeable injuries that result, we assume that section 1983 liability may arise when: (1) the state actors created or increased the danger to the plaintiff; and (2) the state actors acted with deliberate indifference. <u>McKinney</u>, 309 F.3d at 313; <u>see</u> <u>also</u> <u>Piotrowski v. City of Houston</u>, 51 F.3d 512 (5th Cir. 1995). We decline to address this question, however, because the appellant did not brief this issue, and thus, he effectively waived it on appeal. <u>See</u> <u>Yohey v. Collins</u>, 985 F.2d 222, 224-25 (5th Cir. 1993) (stating that although the court liberally construes briefs on appeal, arguments must be briefed to be preserved).

iii. *Fair Attribution Standard*

Despite the absence of any exception to the general rule, Priester contends that Ward's actions should be attributed to the school officials because of both: the alleged conspiracy between Cahalane and Ward to gauge her son's eye, and the history of unpunished racial bullying, which she argues was an official endorsement that facilitated Terry's injury. For the purpose of section 1983, private action may be deemed state action when the defendant's conduct is "fairly attributable to the State." <u>Bass</u>, 180 F.3d at 241 (5th Cir. 1999). Under the "fair attribution" test, the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor. <u>Daniel v. Ferguson</u>, 839 F.2d 1124, 1130 (5th Cir. 1988). State action will not accrue merely because of government acquiescence or approval of the private entity's actions. <u>Yeager v. City of McGregor</u>, 980 F.2d 337, 342 (5th Cir. 1993). A party may fairly be said to be a state actor only when "he has acted with or

12

has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Daniel, 839 F.2d at 1130; Bass, 180 F.3d at 242 (stating that a "State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement [or] where the government has so far insinuated itself into a position of interdependence...that it was a joint participant in the enterprise.").

On the facts *sub judice*, Ward's conduct cannot be fairly attributable to the state. Although Priester asserts an alleged conspiracy between Cahalane and Ward, the record shows no evidence of the content of the conversation nor does it highlight any actual agreement. Without knowledge of the content of the conversation or any objective evidence of an agreement, Priester's assertion is nothing more than conclusory. Due to the pleading and proof requirements to present a prima facia case of conspiracy,[9] this evidence is legally insufficient to overcome summary judgment.

Moreover, although the district court did not address Priester's contention that the school officials' failure to adequately respond to either her son's history of racial abuse at the school or Ward's assault on Priester is tantamount to state endorsement, her argument fails to overcome the burden of summary judgment. The record is devoid of any active participation or significant encouragement of the alleged racial abuse by the school officials. Rather than any affirmative act, Priester alleges omissions; the school's inaction and indifference, although morally reprehensible, do not rise to the level of legal action under the fair attribution standard. Nor does the record show any evidence that Ward and the school officials shared the common objective of gouging Terry's eye, as is required to qualify as joint participation. Therefore, Ward's seemingly private conduct may not

___

[9] The allegation of a conspiracy between private and state actors requires more than conclusory statements. See Brinkman v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986); citing Arsenaux Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982).

13

be charged to the state because the school officials mere indifference does not arise to the level of fair attribution.

B.     Equal Protection

Priester asserts that the school officials use of racial epithets, their inability or unwillingness to respond to complaints of racial mistreatment, and their failure to pay her son's medical expenses violated Priester's equal protection rights.  To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."  Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001).  A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group."  Id.

Priester contends that the use of racial epithets, combined with other conduct, deprived her son of his clearly established rights.  This court has held that the use of a racial epithet without harassment or other conduct depriving the victim of his established rights does not constitute an equal protection violation.  Williams v. Bramer, 180 F.3d 699, 706, clarified, 186 F.3d 633 (5th Cir. 1999) ("Where the conduct at issue consists solely of speech, there is no equal protection violation.").  Assuming arguendo that Cahalane used racial epithets, Priester must also demonstrate additional genuine issues of material fact, where school officials participated in actions that deprived Terry of his constitutional rights.

Priester argues that the additional evidence of racial animus stemmed from the high school principal's failure to conduct an investigation in regards to Priester's racial harassment complaints.

14

While the record does not show whether school officials investigated Priester's twice-weekly complaints of harassment, the record does indicate that Halford investigated and completed a report on Terry's injury, resolved a complaint regarding his grades, and investigated Priester's complaint regarding harassment of her son during a field trip. Thus, while the school officials may not have adequately responded to all of Priester's numerous complaints, the record does not show that the officials' inaction on some of the complaints rises to the level of an equal protection violation. Moreover, Priester presents no evidence establishing that the alleged racial harassment went unpunished while other types of misconduct was punished or that the school did not document the racial harassment in its records.

In the alternative, Priester argues that additional evidence of constitutional violations stems from the defendants refusal to pay her son's medical expenses pursuant to Miss. Code Ann. § 37-11-9. Priester also contends that the defendants had an affirmative duty to develop a code of discipline pursuant to Miss. Code Ann. § 37-11-29(3) and to report certain crimes committed by students on school property under Miss. Code Ann. § 37-11-29(3). This court finds those arguments unpersuasive. Priester's reliance upon Miss. Code Ann. § 37-11-9 fails because that statute merely "authorizes" a school district to use athletic funds to pay, or to purchase insurance to pay, medical expenses incurred when a student is injured during school athletics. The statute does not state that the payment of medical expenses is required, and the record does not indicate whether the school paid medical expenses for other injured athletes. Furthermore, Priester's argument based upon Miss. Code Ann. § 37-11-55 and § 37-11-29(3) were raised for the first time on appeal. This court will not review "an issue [raised] for the first time on appeal merely because a party believes he might prevail if given the opportunity to try a case on a different theory." Leverette v. Louisville Ladder Co., 183

F.3d 339, 342 (5th Cir. 1999).  Thus, we refuse to grant Priester a 'second-bite of the apple' merely to try a claim on appeal under a different legal theory  than the one espoused to the district court. Therefore, without evidence in addition to the alleged racial epithets, Priester has failed to come forward with a sufficient claim from which a reasonable juror could infer racial animus by a state official, and thus, Priester's equal protection claim is denied.

### III. Supplemental Jurisdiction over State Law Claims

We turn finally to whether the district court erred in dismissing the state law claims without prejudice.  Priester challenges that the district court erred in declining to exercise supplemental jurisdiction over the state law claims after dismissing the federal claims.  A district court may decline to exercise supplemental jurisdiction if it has dismissed all the claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  We review such decisions for abuse of discretion.  Sibley v. Lemaire, 184 F.3d 481, 490 (5th Cir. 1999).  In cases where all of the federal claims are dismissed before trial, the general rule is that a district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had pendent jurisdiction.  Id.  Therefore, we find no abuse of discretion in the district court's decision not to hear the appellant's state law claims in federal court.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.